Amir Shlesinger (SBN 204132)
Farah Tabibkhoei (SBN 266312)
Sarah B. Johansen (SBN 313023)
REED SMITH LLP
355 South Grand Ave., Suite 2800
Los Angeles, CA 90071-1514
Telephone: +1 213 457 8000
Facsimile: +1 213 457 8080

Attorneys for Defendant
UnitedHealthcare Insurance Company

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### FIRST STREET FEDERAL COURTHOUSE

| | |
|---|---|
| Namdy Consulting, Inc.,<br><br>Plaintiff,<br><br>vs.<br><br>UnitedHealthcare Insurance Company and DOES 1-20.<br><br>Defendants. | Case No.: 2:18-cv-1283 RSWL (KSx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT UNITEDHEALTHCARE INSURANCE COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Hearing Date:     May 1, 2018<br>Time:     10:00 a.m.<br>Courtroom:     TBD<br><br>Compl. Filed:     November 30, 2017 |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................ 1

II. FACTUAL BACKGROUND ............................................................... 3

III. LEGAL STANDARD ......................................................................... 4

IV. LEGAL ARGUMENT ......................................................................... 4

    A.    NAMDY's Claims Should Be Dismissed Because NAMDY Has Not Sufficiently Alleged A Valid Assignment Of Any Claims.......................................................................................... 4

    B.    NAMDY's Complaint Fails Because It Does Not Identify Any Specific Medical Claim At Issue. .............................................. 6

    C.    NAMDY's Claims for Recovery of Payment for Services Rendered And Quantum Meruit Fail Because NAMDY Has Not Alleged That UHIC Made Any Specific Request For Services or Benefitted From the Services ................................... 8

    D.    NAMDY's Open Book Account Claim Fails Because NAMDY Has Not Sufficiently Pled A Mutual Agreement or Indebtedness of a Sum Certain................................................ 10

    E.    NAMDY's Claim for Breach of Implied Contract Fails ......................... 11

    F.    NAMDY's Claim for Declaratory Relief Fails Because It Is Not An Independent Cause Of Action And It Is Duplicative Of NAMDY's Other Claims ................................................... 14

    G.    NAMDY's Interference Claim Fails Because UHIC Is Not A Stranger To The Economic Relationship Between the Physicians And Their Patients And NAMDY Has Not Sufficiently Pled Facts to Satisfy Each Element of This Claim ............. 15

V. CONCLUSION ................................................................................. 19

DEFENDANT'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applied Equipment Corp., v. Litton Saudi Arabia Ltd.*,
   7 Cal. 4th 503 (1994) ...................................................................... 15, 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................ 4

*Banner Entertainment, Inc. v. Super. Ct.*,
   62 Cal. App. 4th 348 (1998) ................................................................. 11

*Barlow Respiratory Hospital v. Cigna Health & Life Insurance
   Company*,
   No. 2:15-CV-08411-RGK-PLA, 2016 WL 7626446 (C.D. Cal. Sept.
   30, 2016) ................................................................................................. 8

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................ 4

*Bustamante v. Intuit, Inc.*,
   141 Cal. App. 4th 199 (2006) .......................................................... 11, 13

*Cal. Lettuce Growers v. Union Sugar Co.*,
   45 Cal. 2d 474 (1955) ........................................................................... 13

*California Medical Ass'n. v. Aetna U.S. Healthcare of California, Inc.*,
   94 Cal App. 4th 151 (2001) .................................................................... 9

*Casa Bella Recovery International, Inc. v. Human Inc.*,
   SACV 17-01801 AG (JDEx); SACV 17-01804 AG (JDEx); SACV
   17-01807 AG (JDEx), 2017 WL 6030260 (C.D. Cal. Nov. 27, 2017) ..... 7

*Cedars Sinai Med. Ctr. v. Mid-West Nat. Life. Ins. Co.*,
   118 F. Supp. 2d 1002 (C.D. Cal. 2000) ................................................ 12

*City of Cotati v. Cashman*,
   29 Cal. 4th 69 (2002) ............................................................................ 14

*Cockerell v. Title Ins. & Trust Co.*,
   42 Cal. 2d 284 (1954) ............................................................................. 5

DEFENDANT'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT

*Community Hospital of the Monterey Peninsula v. Aetna Life Insurance Company*,
119 F. Supp. 3d 1042 (N.D. Cal. 2015) .................................................................. 8

*Compass Bank v. Petersen*,
886 F. Supp. 2d 1186 (C.D. Cal. 2012) ................................................................ 14

*Crown Imps., LLC v. Superior Court*,
223 Cal. App. 4th 1395 (2014) ............................................................................. 16

*Day v. Alta Bates Med. Ctr.*,
98 Cal. App. 4th 243 (2002) .................................................................................... 8

*DC3 Entertainment, LLC v. John Galt Entertainment, Inc.*,
412 F. Supp. 2d 1125 (W.D. Wash. 2006) ............................................................. 5

*Della Penna v. Toyota Motor Sales U.S.A., Inc.*,
11 Cal. 4th 376 (1995) ................................................................................... 15, 16

*Dreyer's Grand Ice Cream v. Ice Cream Distributors of Evansville, LLC*,
No. 10-00317 CW, 2010 WL 1957423 (N.D. Cal. May 14, 2010) ....................... 10

*Grant v. Aurora Loan Servs., Inc.*,
736 F. Supp. 2d 1257 (C.D. Cal. 2010) ................................................................ 13

*Guilbert v. Regents of University of California*,
93 Cal. App. 3d 233 (1979) .................................................................................. 14

*H. Russell Taylor's Fire Prevention Serv., Inc. v. Coca Cola Bottling Corp.*,
99 Cal. App. 3d 711 ( 1979) ................................................................................... 10

*Halvorsen v. Aramark Unif. Servs.*,
65 Cal. App. 4th 1383 (1998) ............................................................................... 11

*Heritage Pacific Financial, LLC v. Monroy*,
215 Cal. App. 4th 972 (2013) ................................................................................. 5

*Hood v. Superior Court*,
33 Cal. App. 4th 319 (1995) ................................................................................. 14

*Imperial Ice v. Rossier*,
18 Cal. 2d 33 (1941) ............................................................................................. 15

DEFENDANT'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT

*Jasmine Networks, Inc. v. Superior Court*,
　180 Cal. App. 4th 980 (2009) ................................................................ 5

*Korea Supply Co. v. Lockheed Martin Corp.*,
　29 Cal. 4th 1134 (2003) ....................................................................... 18

*Krasley v. Superior Court of San Diego County*,
　101 Cal. App. 3d 425 (1980) ............................................................... 13

*Lawrence Block Co. v. Palston*,
　123 Cal. App. 2d 300 (1954) ............................................................... 13

*Levin v. Knight*,
　780 F.2d 786 (9th Cir. 1986) ............................................................... 13

*Lindsay v. Lewandowski*,
　139 Cal. App. 4th 1618 (2006) ............................................................ 13

*Maggio, Inc. v. Neal*,
　196 Cal. App. 3d 745 (1987) ............................................................... 10

*McHenry v. Renne*,
　84 F.3d 1172 (9th Cir. 1996) ................................................................. 7

*Mintz v. Blue Cross of California*,
　172 Cal. App. 4th 1594 (2009) ...................................................... 16, 17

*Mission Valley East, Inc. v. County of Ker*n,
　120 Cal. App. 3d 89 (1981) ................................................................... 5

*Money Store Inv. Corp. v. S. California Bank*,
　98 Cal. App. 4th 722 (2002) ............................................................... 13

*Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*,
　319 F. Supp. 2d 1059 (2002) .............................................................. 16

*Neptune Society Corp. v. Longanecker*,
　194 Cal. App. 3d 1233 (1987) ............................................................... 5

*Nieto v. Blue Shield of California Life & Health Insurance Co.*,
　181 Cal. App. 4th 60 (2010) .................................................................. 9

*Ochs v. PacifiCare of California*,
　115 Cal. App. 4th 782 (2004) ................................................................ 8

DEFENDANT'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT

*Orthopedic Specialists of S. Cal. v. Cal. Pub. Emps. Ret. Sys.*,
   228 Cal. App. 4th 644 (2014) ................................................................ 12

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
   50 Cal. 3d 1118 (1990) ....................................................................... 15

*Ratcliff Architects v. Vanir Constr. Mgmt., Inc.*,
   88 Cal. App. 4th 595 (2001) ................................................................ 14

*Rickards v. Canine Eye Registration Foundation, Inc.*,
   704 F.2d 1149 (9th Cir. 1983) ............................................................. 15

*San Jose Contr., Inc. v. S.B.C.C., Inc.*,
   155 Cal. App. 4th 1528 (2007) ............................................................ 16

*Schauer v. Mandarin Gems of Cal., Inc.*,
   125 Cal. App. 4th 949 (2005) ................................................................ 5

*Signal Hill Service, Inc. v. Macquarie Bank Ltd.*,
   No. CV 11-1539 MMM, 2013 WL 12244056 (C.D. Cal. June 12,
   2013) ................................................................................................ 15

*Silicon Labs Integration, Inc. v. Melman*,
   No. C-08-04030-RMW, 2010 WL 890140 (N.D. Cal. March 8, 2010) ............... 15

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ................................................................. 4

*Stanford Hosp. and Clinics v. Multinational Underwriters, Inc.*,
   No. C-07-05497 JF (RS), 2008 WL 5221071 (N.D. Cal. Dec. 12,
   2008) ................................................................................................ 12

*Stewart v. Preston Pipeline Inc.*,
   134 Cal. App. 4th 1565 (2005) ............................................................ 11

*Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc.*,
   520 F. Supp. 2d 1184 (C.D. Cal. 2007) ................................................ 12

*Tsemetzin v. Coast Fed. Savs. & Loan Ass'n.*,
   57 Cal. App. 4th 1334 (1997) ............................................................. 10

*Wall St. Network, Ltd. v. New York Times Co.*,
   164 Cal. App. 4th 1171 (2008) ............................................................ 11

DEFENDANT'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT

*Weddington Prods., Inc. v. Flick*,
　60 Cal. App. 4th 793 (1998) ..................................................................... 12

*Williams v. Galloway*,
　211 Cal. App. 2d 302 (1962) ...................................................................... 5

*Yari v. Producers Guild of Am., Inc.*,
　161 Cal. App. 4th 172 (2008) .................................................................... 11

*YDM Management Co., Inc. v. Aetna Life Insurance Company*,
　No. CV 15-00897 DDP (Ex), 2016 WL 1254162 (C.D. Cal. March 28,
　2016) ...................................................................................................... 5, 6

**Statutes**

Cal. Civ. Code § 1550 ................................................................................. 11

Cal. Civ. Code § 1565 ................................................................................. 11

Cal. Civ. Code § 1580 ................................................................................. 11

Civ. Proc. Code § 337a ............................................................................... 10

Health and Saf. Code § 1343(e)(1) .............................................................. 9

Health and Saf. Code § 1389.3 .................................................................... 9

**Other Authorities**

1 Cal. Jur. 3d Accounts and Accounting § 33 (2017) ................................. 10

DEFENDANT'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT

# I.     <u>INTRODUCTION</u>

Plaintiff NAMDY Consulting, Inc. ("NAMDY"), a collection firm, sues Defendant UnitedHealthcare Insurance Company ("UHIC") seeking additional reimbursement for alleged emergency or post-stabilization medical services rendered to UHIC's insureds.  Specifically, NAMDY concedes that UHIC paid what it calculated is the reasonable value of the services, but contends that more is owed.  To be clear:  NAMDY is not a medical provider, did not provide any of the medical services at issue, and does not allege any contact or relationship with either UHIC or any of the insureds.  Rather, NAMDY brings this lawsuit as an alleged *assignee* of accounts receivable of unnamed, non-contracted (*e.g.*, "out-of-network"), non-party physicians ("Physicians"), and seeks to recover additional reimbursement based on the non-party Physicians' unilaterally-set, full billed charges.

NAMDY's entire Complaint fails, however, for three reasons.  ***First***, NAMDY has not pled any ***facts*** to support its alleged assignment from the unnamed Physicians.  NAMDY does not attach or quote language from the alleged assignments, does not plead the terms or scope of the assignment, and does not even allege whether there are multiple assignments for each provider or a universal assignment.  Nor does NAMDY identify the alleged assignors, when the assignments were effectuated, or which alleged accounts receivable or claims for reimbursement were assigned.  Rather, NAMDY merely concludes that it is "an assignee of certain medical groups, physicians, or health care providers" and was assigned their "right to payment." (Compl., ¶¶ 3-4.)  But more is needed before NAMDY can assert the legal claims it brings.  Accordingly, for this reason alone, the entire Complaint is deficient and should be dismissed.

***Second***, NAMDY's entire Complaint fails because it consists of general, conclusory allegations, and is wholly devoid of any factual support.  Nowhere in the Complaint does NAMDY identify the specific medical claims at issue, when the alleged services were provided, to whom, the amounts of any claim, the nature of the

DEFENDANT'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT

claims or even the precise number of claims at issue.  Instead, NAMDY attempts to base its claims on non-factual, conclusory assertions and generic conduct it attributes to UHIC.  But NAMDY's Complaint does not put UHIC on notice of what *specific* conduct or transactions are at issue, and the Complaint is therefore uncertain and defective.

*Third*, NAMDY's entire Complaint is premised on the false assumption that UHIC has an obligation to pay the Physician based on provisions in the Knox-Keene Act and its related regulations.  UHIC, however, is an insurance company "licensed by the Department of Insurance."  (Compl., ¶ 5.)  The Knox-Keene Act does not apply to such entities, but applies to health plans that are regulated by the Department of Managed Health Care ("DMHC").  Accordingly, NAMDY's reliance on the Knox-Keene Act is to no avail and cannot support any of the claims asserted.

Additionally, each of NAMDY's claims fail as a matter of law for other independent reasons set forth below.  NAMDY's claims for recovery for services rendered and quantum meruit fail, for instance, because NAMDY does not allege that UHIC made a specific request for services or benefitted from the services, essential elements of NAMDY's claims.  NAMDY's claim for open book account fails because there are no allegations of a *mutual* agreement to maintain a book account of credits and debits as to any claim, nor an indebtedness of a sum certain, all of which are essential elements of a claim for open book account.

NAMDY's claim for breach of implied contract fails because NAMDY has not pled any words or conduct by UHIC indicating that it agreed to pay for the services and it certainly did not promise to pay 100% of the Physicians' full, billed charges for any of the purported medical services at issue.  In fact, given the nature of the services, there are even no allegations that NAMDY contacted UHIC before providing the services.  To the extent NAMDY relies on alleged authorization of services, it is well-settled that neither the verification of eligibility nor authorization of benefits constitutes a promise to pay.  NAMDY's failure to plead a meeting of the minds

DEFENDANT'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1   regarding the material terms of an alleged agreement or sufficiently definite terms to

2   constitute an enforceable contract is fatal to its contract claim.

3       NAMDY's claim for declaratory relief fails because it is not an independent

4   cause of action and it is duplicative of NAMDY's other claims for relief.

5       Finally, NAMDY's claim for interference fails as a matter of law because

6   UHIC is not a stranger to the Physicians' economic relationship with its patients or to

7   UHIC's own contracts with its insureds, which NAMDY alleges underlies UHIC's

8   payment obligation.  Further, NAMDY has not pled any independently wrongful

9   conduct to support its claim or sufficiently alleged facts showing UHIC was certain or

10  substantially certain that its actions would cause an interference.

11      For all of these reasons, UHIC respectfully requests that the Court grant its

12  Motion to Dismiss.

13      **II.     FACTUAL BACKGROUND**[1]

14      NAMDY is a corporation that is in the business of purchasing accounts

15  receivable.  (Compl., ¶ 2.)  UHIC is a company that transacts the business of

16  insurance, and is regulated by the Department of Insurance.  (Compl., ¶ 5.)  NAMDY

17  alleges that it is an "assignee" of certain unidentified, non-party Physicians who

18  assigned NAMDY the "right to payment and to collect" their fees from UHIC for

19  services rendered to UHIC's insureds.  (Compl., ¶¶ 1-4, 14.)  The Physicians are "out-

20  of-network providers" who do not have a contract with UHIC for the payment of

21  services.  (Compl., ¶ 14.)  NAMDY has not attached a copy of any assignment, has

22  not pled the terms or scope of any assignment, and has not identified any specific

23  "account receivable" that is purportedly the subject of its alleged assignment.

24      Nonetheless, based on these bare-bone allegations, NAMDY  brings this

25  Complaint alleging causes of action for: (1) recovery of payment for services

26

27  [1] In accordance with case law, UHIC accepts the facts NAMDY recites in its
28  Complaint as true for purposes of this motion to dismiss.  However, UHIC contests
    many of these facts and does not accept them as true for any other purpose.

- 3 -

rendered; (2) recovery on open book account; (3) quantum meruit; (4) breach of implied contract; (5) declaratory relief; (6) negligence per se; and (7) interference with prospective economic advantage.

On February 15, 2018, counsel for the parties met and conferred telephonically pursuant to Local Rule 7-3.  *See* Declaration of Farah Tabibkhoei, ¶ 3.  During that conversation, counsel for NAMDY stipulated to withdraw its claim for negligence per se.  *Id.* Based on NAMDY's counsel's representations, UHIC has not addressed the negligence per se cause of action in this motion.

## III.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  It is "plaintiff's obligation to provide . . . more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Moreover, federal courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## IV.   LEGAL ARGUMENT

### A.   NAMDY's Claims Should Be Dismissed Because NAMDY Has Not Sufficiently Alleged A Valid Assignment Of Any Claims

NAMDY's attempt to assert claims based on an alleged assignment fails because NAMDY has not sufficiently pled the scope or existence of a valid assignment.  "The burden of proving an assignment falls upon the party asserting

- 4 -

rights thereunder." *Neptune Society Corp. v. Longanecker*, 194 Cal. App. 3d 1233, 1242 (1987).  Importantly, the assignor's intent is a key element of any assignment and "must be clear and positive to protect the obligor . . . from any further claim by the primary obligee." *Mission Valley East, Inc. v. County of Ker*n, 120 Cal. App. 3d 89, 96-97 (1981) (citing *Cockerell v. Title Ins. & Trust Co.*, 42 Cal. 2d 284, 292 (1954)).  Further, "[a]n assignment agreement must describe the subject matter of the assignment with sufficient particularity to identify the rights assigned." *Heritage Pacific Financial, LLC v. Monroy*, 215 Cal. App. 4th 972, 988 (2013) (internal citations omitted).  "A basic tenet of California contract law dictates that when a particular right or set of rights is defined in an assignment, additional rights not similarly defined or named cannot be considered part of the rights transferred." *DC3 Entertainment, LLC v. John Galt Entertainment, Inc.*, 412 F. Supp. 2d 1125, 1144 (W.D. Wash. 2006).

It is well-established that the assignment of a right to property (*e.g.*, the right to payment) does not, by itself, effect an assignment to an ancillary cause of action that may be related to that property.  *See e.g.*, *Jasmine Networks, Inc. v. Superior Court*, 180 Cal. App. 4th 980, 995 (2009) (finding it is a "central premise" that a right of action for damage to property is distinct from the title to the property and "the transfer of the latter does not by itself effect a transfer or diminution of the former."); *Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 956-57 (2005) (divorce agreement awarding diamond ring purchased by husband to wife did not automatically transfer husband's claim against jeweler for fraud); *Williams v. Galloway*, 211 Cal. App. 2d 302, 304-06 (1962) (corporation's sale and transfer to second corporation of "all personal property" and all "property held on a lease hold basis" did not transfer claim for money that original corporation had against its former lessor).

In *YDM Management Co., Inc.[2] v. Aetna Life Insurance Company*, No. CV 15-00897 DDP (Ex), 2016 WL 1254162, *4 (C.D. Cal. March 28, 2016), for example, the

_____

[2] UHIC believes that there may be some business or ownership relationship between

DEFENDANT'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1   court granted a motion to dismiss all of the plaintiff's causes of action because the

2   alleged assignment attached to the complaint failed to support the allegations

3   regarding the scope of the assignment and the complaint failed to sufficiently allege

4   the contracts or claims at issue.

5          Here, NAMDY fails to plead the subject matter of the alleged assignment with

6   sufficient particularity to identify the rights assigned.  NAMDY does not attach any

7   assignment to the Complaint for either this Court or UHIC to ascertain the scope of

8   the alleged assignment.  NAMDY merely alleges that the Physicians "assigned their

9   right to payment and to collect their fees from Defendants to NAMDY" without

10  specifying the bundle of rights allegedly assigned or the contracts, patients,

11  treatments, or dates of service (*e.g.*, the "accounts receivable") to which the

12  assignment allegedly applies.  (Compl., ¶ 4.)  NAMDY does not plead the terms of the

13  alleged assignment, the scope, or any intent by the Physicians to assign to NAMDY

14  any ***causes of action*** for monies allegedly owed for services they provided.  More

15  specific allegations are especially important here because NAMDY acknowledges that

16  UHIC already paid what it calculated to be the reasonable amounts for the claims, and

17  NAMDY is now attempting to recover more based on the Physicians' full billed

18  charges.  With no allegations regarding the language, nature, scope, or intent of any

19  alleged assignment, NAMDY's claims, all of which arise from the assignment, should

20  be dismissed.

21  **B.     NAMDY's Complaint Fails Because It Does Not Identify Any Specific**

22          **Medical Claim At Issue.**

23          NAMDY's Complaint is uncertain and ambiguous because NAMDY fails to

24  identify any specific medical claim underlying its causes of action.  NAMDY

25  predicates its entire action on allegations that UHIC underpaid for services rendered to

26

27  NAMDY and YDM and notes that in the *YDM* matter, like NAMDY here, plaintiff
    alleged it was an assignee of "certain medical groups, physicians, or health care
28  providers."  *Id.* at *4.

DEFENDANT'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1    undisclosed members by undisclosed Physicians; however, UHIC had no contractual

2    obligation *directly to* the Physicians to pay for their services or to pay a specific

3    amount, let alone 100% percent of the Physicians' billed charges.  Rather, the only

4    contracts dictating the amount due to the Physicians are the insureds' Evidence of

5    Coverage ("EOC") or Summary Plan Descriptions ("SPD"), *e.g.*, the individual

6    contracts that insureds have with UHIC or plans sponsors, which provide for specific

7    levels of benefits for services provided by non-contracting providers—and, there are

8    no allegations that UHIC breached those contracts.  *See e.g., Casa Bella Recovery*

9    *International, Inc. v. Human Inc.*, SACV 17-01801 AG (JDEx); SACV 17-01804 AG

10   (JDEx); SACV 17-01807 AG (JDEx), 2017 WL 6030260, *3 (C.D. Cal. Nov. 27,

11   2017).

12        Therefore, to properly apprise UHIC of the issues and specific conduct raised

13   by the Complaint—to which UHIC is required to respond—NAMDY must identify

14   the specific medical claims at issue for each insured, and the amounts in dispute.

15   Without this critical information, UHIC cannot determine which insureds' contracts

16   apply, or the amounts paid or purportedly owed to NAMDY.  Such basic facts are

17   necessary not only so that the Court can evaluate whether NAMDY in fact has a

18   cognizable claim, but also so that UHIC may know what affirmative defenses are

19   appropriate to assert.  *See id.*  (requiring plaintiff to identify how many patients

20   treatment payments are at issue, between what dates, and terms of payments); *see also*

21   *McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996) (affirming order granting

22   motion to dismiss and finding that a complaint "without simplicity, conciseness, and

23   clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential

24   functions of a complaint").  This is especially important here to allow UHIC to

25   understand whether the claims at issue are for its insured, or are subject to other plans

26   or self-paying employer groups.  Without identifying the claims at issue, neither

27   UHIC, nor this Court, will be aware of whether there are other indispensable parties,

28   or how many.  In short, UHIC cannot defend this action without being put on notice of

- 7 -

1  the specific medical claims at issue.  And it should not be required to engage in

2  extensive and costly discovery merely to ascertain whether NAMDY can state a claim

3  for relief.  This is a threshold burden NAMDY must meet before it can invoke the

4  privilege of the courts.

5  **C.**    **NAMDY's Claims for Recovery of Payment for Services Rendered And**

6         **Quantum Meruit Fail Because NAMDY Has Not Alleged That UHIC Made**

7         **Any Specific Request For Services or Benefitted From the Services**

8      To recover for services rendered to a third person, a plaintiff must allege a

9  specific request for services from the defendant.  *Day v. Alta Bates Med. Ctr.*, 98 Cal.

10  App. 4th 243, 248 (2002).  "[C]ompensation for a party's performance should be paid

11  by the person whose request induced the performance."  *Id.*  Thus, to a state a cause of

12  action for services rendered, NAMDY must allege that UHIC made a specific request

13  to the Physicians for services.

14      Similarly, to recover in quantum meruit, the "plaintiff must establish both that

15  he or she was acting pursuant to either an express or implied request for such services

16  from the defendant and that the services rendered were intended to and did benefit the

17  defendant."  *Day*, 98 Cal. App. 4th at 248; *see also Ochs v. PacifiCare of California*,

18  115 Cal. App. 4th 782, 794 (2004) (same); *Community Hospital of the Monterey*

19  *Peninsula v. Aetna Life Insurance Company*, 119 F. Supp. 3d 1042, 1051-52 (N.D.

20  Cal. 2015) (noting that health plans do not request services); *Barlow Respiratory*

21  *Hospital v. Cigna Health & Life Insurance Company*, No. 2:15-CV-08411-RGK-PLA,

22  2016 WL 7626446, at *3 (C.D. Cal. Sept. 30, 2016) ("It is undisputed that Defendant

23  did not request that Plaintiff provide C.S. with medical services.  Rather, C.S.

24  requested medical services from Plaintiff, who then contacted Defendant to verify

25  C.S.'s coverage eligibility. The undisputed facts thus show that Plaintiff cannot

26  establish the third element of its quantum meruit claim.").

27      Here, NAMDY has failed to plead (as it must) that UHIC made a specific

28  request to the Physicians for services or that UHIC somehow benefitted from the

DEFENDANT'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1   services provided to its insureds.  Rather, NAMDY attempts to circumvent the

2   elements of these claims by relying on the Knox-Keene Act, codified at California

3   Health and Safety Code Section 1371 *et seq.* to argue that under the Act, UHIC is

4   required to pay the usual, reasonable, and customary rate because the alleged services

5   at issue are for emergency or post-stabilization services.  But NAMDY's reliance on

6   the Knox-Keene Act and its related regulations is misplaced because UHIC is not a

7   health plan that is subject to these provisions.  The Knox-Keene Act is a

8   comprehensive system of regulations that governs ***health care service plans*** under the

9   jurisdiction of the DMHC.  *See California Medical Ass'n. v. Aetna U.S. Healthcare of*

10  *California, Inc.*, 94 Cal App. 4th 151, 155, n.3 (2001); *see also Nieto v. Blue Shield of*

11  *California Life & Health Insurance Co.*, 181 Cal. App. 4th 60, 84-85 (2010)

12  (acknowledging that Health and Safety Code Section 1389.3 applies exclusively to

13  health plans regulated by the DMHC).  Similarly, Title 28 of the California Code of

14  Regulations, Section 1300.71 *et seq.*, also cited by NAMDY (Compl., ¶ 47), is

15  comprised of regulations adopted by the DMHC, which apply to "Health Care Service

16  Plans."

17          Neither the Knox-Keene Act nor its related regulations apply to UHIC because

18  it is **<u>not</u>** a health care service plan regulated by the DMHC or subject to the Knox-

19  Keene Act.  Rather, UHIC is an insurance company that is regulated by the California

20  Department of Insurance and governed by the Insurance Code.  *See* Compl., ¶ 5; *see*

21  *also* Health and Saf. Code § 1343(e)(1) (stating that Health and Safety Code

22  provisions do not apply to insurance companies).

23          As such, to plead claims for services rendered or *quantum meruit*, NAMDY

24  must allege facts showing that UHIC requested the services and/or benefitted from

25  them.  Here, it has not, and cannot, allege either.  Accordingly, NAMDY has failed to

26  state a valid claim for relief under services rendered or *quantum meruit* theories, and

27  its claims should be dismissed.

28

DEFENDANT'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT

**D.**     **NAMDY's Open Book Account Claim Fails Because NAMDY Has Not Sufficiently Pled A Mutual Agreement or Indebtedness of a Sum Certain**

A claim for a book account requires allegations of a debtor-creditor relationship arising out of a contract.  Civ. Proc. Code § 337a.  "In deciding whether a book account exists the court must examine the agreement, or lack of agreement, between the parties and their conduct in the context of their commercial dealing."  *Maggio, Inc. v. Neal*, 196 Cal. App. 3d 745, 752 (1987).  Notably, "[t]he mere incidental keeping of account does not alone create a book account."  *Id.* (citations omitted); *see also Tsemetzin v. Coast Fed. Savs. & Loan Ass'n.*, 57 Cal. App. 4th 1334, 1343 (1997) (rejecting plaintiff's cause of action for open book account because he failed to meet three-part statutory test, the monies sought were due under a contract, and there was no claim that defendant "ever understood or agreed that its obligations under the lease would or could be treated as open book items.").  Further, "to constitute an account stated, it must appear that at the time of the statement an indebtedness from one party to the other existed, that *a balance was then struck* and agreed to be the correct sum owing from the debtor to the creditor, and that *the debtor expressly or impliedly promised to pay* to the creditor *the amount* thus determined to be owing."  *H. Russell Taylor's Fire Prevention Serv., Inc. v. Coca Cola Bottling Corp.*, 99 Cal. App. 3d 711, 726–27 ( 1979) (citing 1 Cal. Jur. 3d Accounts and Accounting § 33 (2017)) (emphasis added); *Dreyer's Grand Ice Cream v. Ice Cream Distributors of Evansville, LLC*, No. 10-00317 CW, 2010 WL 1957423 , *5 (N.D. Cal. May 14, 2010).

Here, NAMDY alleges in a conclusory fashion that the Physicians "maintained contemporaneous, itemized and detailed records" of services provided to patients and that UHIC "has become indebted to the Physicians on open book accounts for the Patients, for money due in the sum to be determined at the time of trial for medical services rendered."  (Compl., ¶¶ 53, 54.)  However, the Complaint is devoid of any facts giving rise to a *mutual agreement* between the parties that payment to the

Physicians for the services rendered to UHIC's insureds would be carried as an open book account or any commercial dealings between the parties that would support such an agreement. The Complaint also fails to allege any *sum certain* for which NAMDY seeks to recover payment or the dates of any items upon which the open book account was allegedly based. Because the mere incidental keeping of accounts does not, without more, create a book account and NAMDY has failed to plead each element of its open book account claim, UHIC's motion to dismiss the open book account claim should be granted.

## E. NAMDY's Claim for Breach of Implied Contract Fails

To state a cause of action for breach of contract, a plaintiff must allege: (1) the existence of a contract and its terms; (2) plaintiff's performance or excuse for nonperformance; (3) breach by defendant; and (4) that the breach caused plaintiff's harm. *See Wall St. Network, Ltd. v. New York Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008). "A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008). Both express and implied contracts require mutual assent "[c]ommunicated by each to the other." Cal. Civ. Code §§ 1550, 1565. All parties to a contract must "agree upon the same thing in the same sense." Cal. Civ. Code § 1580; *see also Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1586 (2005) (a valid contract must contain mutual promises).

"[T]he failure to reach a meeting of the minds on all material points prevents the formation of a contract even though the parties have orally agreed to some terms, or have taken some action related to the contract." *Banner Entertainment, Inc. v. Super. Ct.*, 62 Cal. App. 4th 348, 359 (1998); *see also Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 215 (2006). Further, a contract is not enforceable if its terms are too uncertain. *Halvorsen v. Aramark Unif. Servs.*, 65 Cal. App. 4th 1383, 1389 (1998) ("An alleged oral contract with vague and uncertain terms is not binding."); *see also*

DEFENDANT'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1   *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998) (contract terms

2   must be certain enough to "provide a basis for determining the existence of a breach

3   and for giving an appropriate remedy.").

4        Here, NAMDY has failed to sufficiently plead the existence of an enforceable

5   contract because the Complaint lacks any factual allegations that UHIC spoke any

6   words or engaged in any conduct indicating an agreement to pay the Physicians' total

7   billed charges.  The mere authorization of services is not adequate to give rise to a

8   contract claim.  *See Orthopedic Specialists of S. Cal. v. Cal. Pub. Emps. Ret. Sys.*, 228

9   Cal. App. 4th 644, 649 (2014) (finding no oral promise existed between the parties

10  where health plan authorized treatment and stated that the provider would be paid for

11  treatment); *Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc.*, 520 F. Supp. 2d

12  1184, 1193 (C.D. Cal. 2007) (authorization of treatment did not constitute an

13  agreement to pay Plaintiff's expenses); *Cedars Sinai Med. Ctr. v. Mid-West Nat. Life*

14  *Ins. Co.*, 118 F. Supp. 2d 1002, 1008 (C.D. Cal. 2000) ("within the medical insurance

15  industry, an insurer's verification is not the same as a promise to pay").

16       Indeed, it is well settled that neither a verification of eligibility nor

17  authorization of benefits constitutes a promise to pay.  *See, e.g., Tenet Healthsystem*

18  *Desert, Inc.*, 520 F. Supp. 2d at 1192-93; *Cedars Sinai Med. Ctr.*, 118 F. Supp. 2d at

19  1008 (a "verification cannot objectively be interpreted as consent to contract" because

20  "within the medical insurance industry, an insurer's verification is not the same as a

21  promise to pay").  "Pre-authorization and verification of benefits . . . [are not] an

22  agreement to pay or a guarantee to pay for medical services provided to an insured."

23  *Tenet Healthsystem Desert, Inc.*, 520 F. Supp. 2d at 1193; *Stanford Hosp. and Clinics*

24  *v. Multinational Underwriters, Inc.*, No. C-07-05497 JF (RS), 2008 WL 5221071, at

25  *6 (N.D. Cal. Dec. 12, 2008) (rejecting the argument that a "verification of coverage

26  amounted to a promise to pay for the patient's treatment"); *see also Orthopedic*

27  *Specialists of S. Cal.*, 228 Cal. App. 4th at 649 (payment for nonemergency services is

28  governed by the Evidence of Coverage and no oral promise existed where health plan

- 12 -

1  authorized treatment and stated provider would be paid for the treatment).

2       Here, all of the allegations of any interaction between the Physicians and UHIC

3  are limited to the authorization context.  (Compl., ¶¶ 17-18.)  Moreover, bare

4  allegations that UHIC somehow agreed to pay the Physicians' unilaterally-set,

5  undisclosed total billed charges would not support a contract claim.  Indeed, such a

6  contract, where one side has the unilateral discretion to set the price points at any level

7  is illusory and is not sufficiently certain to be enforced because it does not provide

8  UHIC any basis for determining the specific financial obligation supposedly agreed to

9  by the parties.  *See, e.g., Cal. Lettuce Growers v. Union Sugar Co.*, 45 Cal. 2d 474,

10 481 (1955) ("Where a contract is so uncertain and indefinite that the intention of the

11 parties in material particulars cannot be ascertained, the contract is void and

12 unenforceable"); *Bustamante*, 141 Cal. App. 4th at 209; *Lindsay v. Lewandowski*, 139

13 Cal. App. 4th 1618, 1622 (2006) (finding that a "contract is unenforceable if the

14 parties fail to agree on a material term or if a material term is not reasonably

15 certain."); *Money Store Inv. Corp. v. S. California Bank*, 98 Cal. App. 4th 722, 728

16 (2002) (finding that an agreement is illusory and lacks mutuality where one party has

17 no definite obligation to perform under the agreement).

18       Further, NAMDY fails to allege that the parties ever agreed on, much less

19 discussed, a material term of the alleged implied contract—price.  *See Levin v. Knight*,

20 780 F.2d 786, 787 (9th Cir. 1986)(stating that price is one of a few contract terms

21 deemed essential as a matter of law); *see also Grant v. Aurora Loan Servs., Inc.*, 736

22 F. Supp. 2d 1257, 1266-67 (C.D. Cal. 2010) (stating that if an essential term of a

23 promise is left to the future agreement of the parties, the promise gives rise to no legal

24 obligation until such future agreement is made); *Krasley v. Superior Court of San*

25 *Diego County*, 101 Cal. App. 3d 425, 432 (1980) ("meeting of minds on the essential

26 features of the agreement" is required for an enforceable contract to exist); *Lawrence*

27 *Block Co. v. Palston*, 123 Cal. App. 2d 300, 308 (1954) (same).  There is no allegation

28 that the Physicians and UHIC ever discussed or agreed on the amount of the

- 13 -

1   Physicians' total billed charges for the medical services rendered.

2       Without specific allegations of fact giving rise to an implied contract, a meeting

3   of the minds as to all material terms, and sufficiently definite terms, there can be no

4   contract between the Physicians and UHIC as a matter of law.  Accordingly, this

5   Court should grant UHIC's motion to dismiss NAMDY's breach of implied contract

6   claim with prejudice.

7   **F.    NAMDY's Claim for Declaratory Relief Fails Because It Is Not An**

8   **Independent Cause Of Action And It Is Duplicative Of NAMDY's Other**

9   **Claims**

10      To be entitled to declaratory relief, NAMDY must establish an "actual

11  controversy relating to the legal rights and duties of the respective parties."  *City of*

12  *Cotati v. Cashman,* 29 Cal. 4th 69, 79 (2002) (emphasis omitted) (the "fundamental

13  basis of declaratory relief is the existence of an actual, present controversy over a

14  proper subject").  Declaratory relief is proper only where there exists an "actual

15  controversy" relating to the legal rights and duties of the parties.  *See Compass Bank*

16  *v. Petersen*, 886 F. Supp. 2d 1186, 1195-96 (C.D. Cal. 2012).

17      Moreover, declaratory relief is an equitable remedy, not a cause of action, and

18  courts have discretion to dismiss the request where other claims provide for similar,

19  effective relief.  *See Guilbert v. Regents of University of California*, 93 Cal. App. 3d

20  233, 244-45 (1979); *see also Hood v. Superior Court*, 33 Cal. App. 4th 319, 324

21  (1995) (declaratory relief is not intended 'to furnish a litigant with a second cause of

22  action for the determination of identical issues" raised in the main action.); *Ratcliff*

23  *Architects v. Vanir Constr. Mgmt., Inc.*, 88 Cal. App. 4th 595, 607 (2001) (dismissing

24  declaratory relief cause of action because it depended on other causes of action, which

25  failed to state a claim against defendants).  Here, NAMDY's declaratory relief claim,

26  which seeks a determination that UHIC is required to pay the Physicians' "billed or

27  total rates charged by the Physicians" is duplicative of NAMDY's other causes of

28  action and should therefore be dismissed.  (Compl., ¶ 74.)

1    For these reasons, the Court should dismiss NAMDY's declaratory relief claim.

2  **G.    NAMDY's Interference Claim Fails Because UHIC Is Not A Stranger To**

3  **The Economic Relationship Between the Physicians And Their Patients**

4  **And NAMDY Has Not Sufficiently Pled Facts to Satisfy Each Element of**

5  **This Claim**

6    To state a claim for intentional interference with prospective economic

7  advantage, the plaintiff must prove "(1) an economic relationship between the plaintiff

8  and some third person containing the probability of future economic benefit to the

9  plaintiff; (2) knowledge by the defendant of the existence of the relationship;

10 (3) intentional acts on the part of the defendant designed to disrupt the relationship;

11 (4) actual disruption of the relationship; and (5) damages to the plaintiff proximately

12 caused by the acts of the defendant." *Silicon Labs Integration, Inc. v. Melman*, No.

13 C-08-04030-RMW, 2010 WL 890140, at *2 (N.D. Cal. March 8, 2010) (citing

14 *Rickards v. Canine Eye Registration Foundation, Inc.*, 704 F.2d 1149, 1456 (9th Cir.

15 1983)).

16    NAMDY's interference claim fails a matter of law because California has long

17 recognized that the core of intentional interference claims is the protection of the

18 contractual or prospective relationship between parties from *outside* interference by a

19 third-party *stranger* to that relationship.  *See Della Penna v. Toyota Motor Sales*

20 *U.S.A., Inc.*, 11 Cal. 4th 376, 381-386 (1995); *Imperial Ice v. Rossier*, 18 Cal. 2d 33

21 (1941).  "It has long been held that a stranger to a contract may be liable in tort for

22 intentionally interfering with the performance of the contract." *Pac. Gas & Elec. Co.*

23 *v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990); *see also Signal Hill Service, Inc.*

24 *v. Macquarie Bank Ltd.*, No. CV 11-1539 MMM (JEMx), 2013 WL 12244056, at *36

25 (C.D. Cal. June 12, 2013) ("Thus, '[t]he tort duty not to interfere with the contract

26 falls only on strangers-interlopers who have no legitimate interest in the scope or

27 course of the contract's performance.'") (citing *Applied Equipment Corp., v. Litton*

28 *Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994)).

- 15 -

1    In a similar vein, the law is clear that an entity with a direct interest or

2  involvement in that contractual relationship is not liable for harm caused by

3  compliance with its contractual obligations.  *See Nat'l Rural Telcoms. Coop. v.*

4  *DIRECTV, Inc*., 319 F. Supp. 2d 1059, 1069-75 (2002) (quoting *Applied Equip. Corp.*

5  *v. Litton Saudi Arabia Ltd., supra,* 7 Cal. 4th at 514 (finding an entity with a direct

6  interest or involvement in a relationship is not liable for harm caused by pursuit of its

7  interests).

8    Indeed, to prevail on an intentional interference claim, a plaintiff must establish,

9  among other things, that the defendant engaged in ***independently wrongful conduct***.

10  *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th at 393 (requiring a

11  showing that defendant "engaged in conduct that was wrongful by some legal measure

12  other than the fact of interference itself."); *see also Crown Imps., LLC v. Superior*

13  *Court*, 223 Cal. App. 4th 1395, 1400 (2014) (holding the torts of interference require

14  the act of interference to have been independently wrongful).  "[A]n act is

15  independently wrongful ***if it is unlawful***, that is, if it is proscribed by some

16  constitutional, statutory, regulatory, common law, or other determinable legal standard

17  . . . rather than merely a product of improper, but lawful purpose or motive." *San Jose*

18  *Contr., Inc. v. S.B.C.C., Inc.*, 155 Cal. App. 4th 1528, 1544-45 (2007) (emphasis

19  added).

20    In *Mintz v. Blue Cross of California*, 172 Cal. App. 4th 1594 (2009), the Second

21  District Court of Appeal expressly held that a third-party administrator "may not be

22  held liable for the tort of interfering with its principle's contract."  *Id.* at 1598.  In that

23  case, the defendant acted as the third-party administrator for the Mintz's health care

24  plan.  Mintz alleged that the defendant interfered with his contract with the health plan

25  by failing to inform him of his right to have a denial of benefits determination

26  reviewed by an independent external review.  Analyzing Mintz's interference claim,

27  the court held that while Mintz alleged the "literal" elements of the claim, his claim

28

DEFENDANT'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1  failed as a matter of law because, as a third-party administrator, the defendant was not

2  a stranger to the contract.  *Id.* at 1603-05.

3         Here, UHIC is directly interested and involved in its insureds' obligation to pay

4  for services rendered by the Physicians and has a contractual duty to communicate the

5  level of benefits afforded to the insureds under their health plans with UHIC.  Indeed,

6  *NAMDY* and the Physicians bring UHIC to this arrangement by submitting claims to

7  UHIC for payment of services provided to the patients.  That is, *NAMDY* and the

8  Physicians ask UHIC to discharge a portion of the insureds' contractual obligation to

9  the Physicians because UHIC has a separate contract with the insured.  That NAMDY

10  subsequently disagrees with UHIC's payment determination under the insureds'

11  contracts does not support a claim that UHIC somehow interfered with the Physicians'

12  economic relationship with the patients.  Indeed, the Physicians, like all non-

13  participating providers, are free to bill patients directly for the services; they do not

14  have to bill the health insurance company.  But, in so doing, the Physicians cannot

15  then also allege that the health plan, here UHIC, somehow interfered with the

16  relationship because it paid an amount the provider did not like.  However NAMDY

17  attempts to frame its claim, under no circumstances can UHIC be considered a

18  "stranger" to this relationship—a prerequisite for pleading an intentional interference

19  claim.  UHIC has legitimate, direct interests and involvement in the scope and course

20  of the performance of its insureds' alleged contracts with the Physicians to pay

21  deductibles and coinsurance.

22         To the extent NAMDY contends that UHIC's communication with its insureds

23  about pricing, co-insurance, and deductibles and its issuance of Explanations of

24  Benefits somehow supports an interference claim, such a notion is likewise without

25  merit.  (Compl., ¶ 84.)  The concepts of "co-insurance" and "deductible" are

26  necessarily determined by reference to a patient's health plan.  As such, when UHIC

27  determines these amounts, it does so based on its *own contract* with the insured.  That

28  NAMDY believes these amounts do not reflect the usual, customary, and reasonable

DEFENDANT'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT

values does not make UHIC's pricing determination, based on its contract with its insureds, independently wrongful conduct to support an interference claim. Permitting NAMDY to impose liability on UHIC because it *complied* with its separate contractual obligations to inform its insureds of the adjudication of claims would lead to an absurd result of requiring UHIC to breach its own contract by refraining from communicating with its insureds.

Further, to adequately plead a cause of action for intentional inference with prospective economic advantage, a plaintiff must satisfy the specific intent requirement by alleging with sufficient factual detail that the "defendant acted with the specific intent, or purpose, of disrupting" the plaintiff's relationship or, alternatively, that "the defendant knew that the interference was certain or substantially certain to occur as a result of its action." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153-55 (2003). Here, NAMDY has not pled facts sufficient to satisfy the intent requirement because there are no factual allegations showing UHIC acted with the specific intent to disturb the relationship between the Physicians and their patients or that UHIC knew or was substantially certain that its actions would disrupt the relationship between the Physicians and patients. The conclusory allegations that UHIC "acted wrongfully" by determining the rates to be paid for each service and informing patients, thus somehow altering the Physicians' economic relationship with patients by causing patients to pay less monies to the Physicians, are not sufficient to plead the requisite element of intent. Compl., ¶¶ 86-88. There are no factual allegations that UHIC knew, with certainty or substantial certainty, that the mere act of adjudicating the claims the Physicians submitted to UHIC pursuant to the insureds' plans and communicating the level of benefits available to insureds, would disrupt the Physicians' prospective economic advantage or that their economic relationship with their patients was in fact disrupted. For all of these reasons, UHIC's motion to dismiss NAMDY's claim for interference with prospective economic advantage should be granted.

DEFENDANT'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1

## V.   <u>CONCLUSION</u>

2   For the foregoing reasons, UHIC respectfully requests that the Court grant its

3   motion to dismiss with prejudice.

4

5   DATED:  March 26, 2018                REED SMITH LLP

6

7                                        By___/s/ Sarah B. Johansen_____
                                            Amir Shlesinger
8                                           Farah Tabibkhoei
                                            Sarah B. Johansen
9                                           Attorneys for Defendant
                                            UnitedHealthcare Insurance Company
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT