O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Namdy Consulting, Inc. ) | CV 18-01283-RSWL-KS |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER re: Defendant's** |
| ) | **Motion to Dismiss Second** |
| v. ) | **Amended Complaint** [18-1] |
| ) | |
| ) | |
| UnitedHealthcare Insurance ) | |
| Co., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |

Plaintiff Namdy Consulting, Inc. ("Plaintiff")
brings this Action against Defendant UnitedHealthcare
Insurance Co. ("Defendant") for additional
reimbursement for alleged emergency or post-
stabilization services rendered to Defendant's
insureds.  Before the Court is Defendants' Motion to
Dismiss for Failure to State a Claim ("Motion") [18-1].
Having reviewed all papers submitted pertaining to this

Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS** Defendant's Motion.

## I. BACKGROUND

### A. Factual Background

Plaintiff is a California corporation that is in the business of purchasing accounts receivable. Second Am. Compl. ("SAC") ¶¶ 1, 2, ECF No. 17. Defendant, a Connecticut corporation, Notice of Removal ¶ 11, ECF No. 1, is an insurance corporation that is regulated by the Department of Insurance. SAC ¶ 6.

According to the SAC, Plaintiff is the assignee of certain non-party medical groups, physicians, or health care providers (the "Physicians"). Id. ¶ 3. Plaintiff alleges that Physicians and their various billing organizations, including Advanced Orthopedic Center, JSE Emergency Medical Group Inc., and Jeffrey M. Smith M.D. Inc., assigned to Plaintiff the right to collect from Defendant for services rendered to Defendant's members, subscribers, or insureds (the "Patients"). Id. ¶¶ 2-5. The Physicians are out-of-network providers, who do not have a contract with Defendant for the payment of services. Id. ¶ 14.

Plaintiff claims that Defendant was legally required to compensate the Physicians at the usual, customary, and reasonable rates, since Physicians rendered services that were emergent or authorized. Id. ¶¶ 17, 18. Nevertheless, Defendant allegedly either refused to pay or substantially underpaid the

Physicians for such services.  <u>Id.</u> ¶ 25.

**B.  <u>Procedural Background</u>**

On November 30, 2017, Plaintiff filed its Complaint [1-1] against Defendant in Los Angeles Superior Court. Defendant removed the Action [1] on February 16, 2018 to this Court.  Defendant filed a Motion to Dismiss the Complaint [7] on March 26, 2018, and on April 13, 2018, before the Court ruled on the Motion to Dismiss, Plaintiff filed its First Amended Complaint ("FAC") [10] alleging claims for (1) recovery of payment for services rendered and quantum meruit, (2) open book account, (3) breach of implied contract, and (4) declaratory relief.  Defendant filed a Motion to Dismiss the FAC [12] on April 27, 2018, and on July 11, 2018, the Court granted Defendant's Motion to Dismiss the entire FAC with leave to amend ("Mot. to Dismiss FAC") [16].  On July 30, 2018, Plaintiff filed its SAC [17], asserting claims for (1) quantum meruit, (2) breach of implied contract, and (3) declaratory relief.

On August 13, 2018, Defendant filed the instant Motion to Dismiss [18-1], to which Plaintiff did not respond.  Instead, on September 14, 2018, Plaintiff filed a Motion for Leave to Amend its SAC [21], which it subsequently amended twice [23, 26].  Defendant filed a response to each amended Motion to Amend [22, 24, 27], and Plaintiff filed a Reply [29].  On October 2, Defendant filed a Notice of Plaintiff's Non-Opposition to its Motion to Dismiss [25].

## II. DISCUSSION

### A.  <u>Legal Standard</u>

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of one or more claims if the pleading fails to state a claim upon which relief can be granted.  A complaint must contain sufficient facts, accepted as true, to state a plausible claim for relief.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quotation omitted).  Dismissal is warranted for a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1988) (citation omitted).

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 763 (9th Cir. 2007) (citation omitted).  A court must presume all factual allegations to be true and draw all reasonable inferences in favor of the non-moving party.  <u>Klarfeld v. United States</u>, 944 F.2d 583, 585 (9th Cir. 1991).  The question is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence to support the claims.  <u>Jackson v. Birmingham Bd. of Educ.</u>, 544 U.S. 167, 184 (2005) (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)).  While a complaint need not contain detailed

factual allegations, a plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

**B.  <u>Discussion</u>**

    1.  <u>Plaintiff's Standing as Assignee</u>

    "To establish Article III standing, a plaintiff must demonstrate 'that it has suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury.'" <u>Washington v. Trump</u>, 847 F.3d 1151, 1159 (9th Cir. 2017) (quoting <u>Massachusetts v. EPA</u>, 549 U.S. 497, 517 (2007)). Although an "assignee of a claim has standing to assert the injury in fact suffered by the assignor," <u>Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.</u>, 770 F.3d 1282, 1291 (9th Cir. 2014) (quoting <u>Sprint Commc'ns Co., L.P. v. APCC Servs.</u>, 554 U.S. 269, 286 (2008)), Defendant contests whether the Physicians validly assigned all of their "Outstanding Bills," which are the basis of Plaintiff's claims.

    "An assignment agreement 'must describe the subject matter with sufficient particularity to identify the rights assigned.'" <u>Heritage Pac. Fin., LLC v. Monroy</u>, 156 Cal. Rptr. 3d 26, 38 (Cal. Ct. App. 2013) (quoting <u>Mission Valley E., Inc. v. Cty. of Kern</u>, 174 Cal. Rptr. 300, 305 (Cal. Ct. App. 1981)). Further, "when a

particular right or set of rights *is* defined in an
assignment, additional rights *not* similarly defined or
named cannot be considered part of the rights
transferred." <u>Id.</u> at 40-41 (quoting <u>DC3 Entm't, LLC v.
John Galt Entm't, Inc.</u>, 412 F. Supp. 2d 1125, 1144
(W.D. Wash. 2006)).  Intent is a key element and "must
be 'clear and positive.'"  <u>Mission Valley E.</u>, 174 Cal.
Rptr. at 305 (quoting <u>Cockerell v. Title Ins. & Tr.
Co.</u>, 267 P.2d 16 (Cal. 1954)).

The alleged assignment here is encompassed in
assignment and assumption agreements (the "Assumption
Agreements") and purchase and assignment agreements
(the "Purchase Agreements") between Plaintiff and the
Physicians.  The assignment includes "all of Assignor's
rights, remedies, titles, and interest in and to any
and all Outstanding Bills that the Assignor provides to
the Assignee during the term of the [Purchase]
Agreement[s]."  SAC, Ex. A, ECF Nos. 17:1-3.[1]  The
Physicians agreed that Plaintiff "may, without
limitation, investigate, appeal, seek reconsideration
of any denied claims, prosecute and file lawsuits or
take any other necessary and appropriate action in
pursuit of the [Purchase] Agreement[s]."  <u>Id.</u>  In other

---

[1] Plaintiff incorporates three Assumption Agreements into
its SAC each entitled Exhibit A: one entered into on December 5,
2016 with Orthopedic Center Inc [17-1]; one entered into on
August 18, 2015 with JSE Emergency Medical Group Inc. [17-2]; and
one entered into on July 2, 2015 with Jeffrey M. Smith, M.D.,
Inc. [17-3].

words, Plaintiff has standing to recover on the
"Outstanding Bills" provided to Plaintiff during the
Purchase Agreements' terms.

Despite the Court's prior Order indicating that
Plaintiff should have attached the Purchase Agreements
or alleged their terms, Plaintiff again fails to attach
the Purchase Agreements to its SAC. Moreover,
Plaintiff still does not adequately allege which, if
any, "Outstanding Bills" were provided to Plaintiff
during the Purchase Agreements' terms. The Court
previously indicated that it was insufficient for
Plaintiff to solely rely on its attached list of
outstanding payments, "Accounting re Unpaid Claims,"
which listed dates from 2013 to 2017, since some of the
"Outstanding Bills" identified in the list materialized
after Plaintiff signed the Assumption Agreements in
2015 and 2016. Id. at 6:13-24. Again, however,
Plaintiff relies on this list and simply adds the
allegation that "all the items in the list of
outstanding payments have been provided to them by the
Physicians and are all "'Outstanding Bills' as referred
to in the . . . Assumption Agreements." SAC ¶ 4.
However, without facts regarding the terms of the
Purchase Agreements, this allegation is insufficient
for the Court to determine whether the "Outstanding
Bills" were validly assigned if they materialized after
Plaintiff signed the Assumption Agreements. Because
the Court is still unable to determine whether the

"Outstanding Bills" were validly assigned, the Court **GRANTS** Defendant's Motion. See _e.g._, In re Brooms, 447 B.R. 258, 267 (B.A.P. 9th Cir. 2011) (finding lower court has discretion to order alleged assignee to produce the assignment agreement and other documents reflecting the assignment terms); _cf._ Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc., 99 F. Supp. 3d 1110, 1130 (C.D. Cal. 2015) (analyzing specific language of assigns to determine standing). The following are additional grounds supporting dismissal.

    2.  Quantum Meruit

    Generally, to recover in quantum meruit, "a plaintiff must establish _both_ that he or she was acting pursuant to either an _express or implied request_ for such services from the defendant _and_ that the services rendered were _intended to and did benefit_ the defendant." Day v. Alta Bates Med. Ctr., 119 Cal. Rptr. 2d 606, 609 (Cal. Ct. App. 2002).

    Here, Plaintiff alleges that Defendant "neither directly requested the treatment nor w[as] the direct beneficiary of the treatment." SAC ¶ 48. Instead, Plaintiff argues that Defendant impliedly requested that the services be rendered. Id. ¶¶ 43, 48. Plaintiff bases this allegation on the premise that where a patient "enters the Emergency Room or requests emergency or post stabilization treatment, [] the Defendant has by implication requested that the

Physician concerned will treat that Patient and that the Defendant will pay for those services." Id. ¶ 43. However, Plaintiff cites no law to support this assertion, and the Court already rejected a similar theory raised by Plaintiff in its FAC. See Order re Mot. to Dismiss FAC 7:24-8:4; see also Cmty. Hosp. of the Monterey Peninsula v. Aetna Life Ins. Co., 119 F. Supp. 3d 1042, 1052 (N.D. Cal. 2016) ("Where, as here, the patient initiates the request for treatment and the hospital contacts the insurer for authorization, the insurer makes no express or implied request."); Barlow Respiratory Hosp. v. Cigna Health & Life Ins. Co., No. 2:15-CV-08411-RGK-PLA, 2016 WL 7626446, at *3 (C.D. Cal. Sept. 30, 2016) (finding plaintiff could not establish a quantum meruit claim where it was defendant's insured who requested medical services from plaintiff, and not the defendant, even though the plaintiff contacted defendant to verify the insured's coverage eligibility).[2]

---

[2] Plaintiff also argues that an implied contract exists between Defendant the Physicians due to the fact that Defendant paid at least some portion of the Physicians' bills. SAC ¶ 44. However, an implied in fact contract, as distinct from an implied request to perform services, is inconsistent with Plaintiff's claim for quantum meruit. See Maglica v. Maglica, 66 Cal. App. 4th 442, 455 (Cal. Ct. App. 1998) ("Unlike the 'quasi-contractual' quantum meruit theory which operates *without* an actual agreement of the parties, an implied-in-fact contract entails an actual contract, but one manifested in conduct rather than expressed in words.'") (citations omitted). Thus, the Court addresses this assertion in its discussion of Plaintiff's claim for breach of implied contract.

Plaintiff attempts to circumvent the foregoing standard by claiming that Defendant violated the Knox-Keene Act and under the Act, Defendant must pay the usual, reasonable, and customary rate for the alleged services emergency or post-stabilization services at issue. SAC ¶ 46. The Knox-Keene Act requires, in relevant part, that "a health care service plan . . . reimburse providers for emergency services and care provided to its enrollees." Cal. Health & Safety Code § 1371.4(b). The Court previously found that Defendant is not a Health Care Service Plan governed by the Knox-Keene Act, but an Insurance Provider properly registered with the California Department of Insurance and governed by the California Insurance Code. Order re Mot. to Dismiss FAC at 8:10-14. Consequently, the Knox-Keene Act does not apply to Defendant, "unless the entity is directly providing the health care service through those entity-owned or contracting health facilities and providers." Cal. Health & Safety Code § 1343(e)(1). Despite the Court's Order, Plaintiff fails to provide any non-conclusory, factual allegations supporting the application of this Act or its exception to Defendant. Thus, the Court **GRANTS** Defendant's Motion as to Plaintiff's claim for quantum meruit.

3. <u>Breach of Implied Contract</u>

The elements of a claim for breach of contract are: "the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the

defendant and damages." <u>First Commercial Mortg. Co. v.</u> <u>Reece</u>, 108 Cal. Rptr. 2d 23, 33 (Cal. Ct. App. 2001) (citation omitted).  "An implied contract is one, the existence and terms of which are manifested by conduct."  Cal. Civ. Code § 1621.  "Agreement may be shown by the acts and conduct of the parties, interpreted in the light of the subject matter and of the surrounding circumstances."  <u>Foley v. Interactive</u> <u>Data Corp.</u>, 765 P.2d 373, 388 (Cal. 1988) (internal quotation omitted).

As Plaintiff alleged in its FAC, Plaintiff again maintains that a contract is implied by: (1) the Knox-Keene Act; and (2) the parties' conduct, namely that Defendant authorized the treatment when called and made payments towards treatment.  SAC ¶ 61.  The first argument fails because, as discussed, Plaintiff has not shown the Knox-Keene Act applies to Defendant.  With respect to the second argument, the Court previously determined that it was persuasive to show the existence of an implied contract, but that "because Defendant partially paid some of the Physicians' bills . . . the issue is not whether there is an implied contract, but rather, whether Defendant impliedly contracted to pay the Physicians the usual, customary, and reasonable rates."  Order re Mot. to Dismiss FAC 12:1-24; <u>Cmty.</u> <u>Hosp.</u>, 119 F. Supp. 3d at 1049 (finding it unreasonable for plaintiff to expect that defendant's authorization constituted a promise to pay all of the billed

charges).  In its SAC, Plaintiff adds the following allegation:

> It is the Plaintiff's assertion that the implied agreement between [Defendant] and Physicians must be an agreement to pay a reasonable rate. As that reasonable rate had not previously been defined it must therefore be a rate that a willing buyer and a willing seller are willing to agree to in the open market, hence a *Quantum Meruit* rate for the services rendered.  The only clear and obvious appropriate standard for determining what that *Quantum Meruit* rate should be, has already been defined by the Supreme Court in the Gould Criteria for Usual Customary and Reasonable rates, which the Supreme Court codified into law as the definition of UCR rates for non-contracted medical services.

SAC ¶ 57.  This allegation still falls short of establishing breach of an implied contract to pay the Physicians' usual, customary, and reasonable rates. First, Plaintiff assumes that because the "reasonable rate had not previously been defined" the rate of the alleged implied contract must be the "*Quantum Meruit* rate for the services rendered." <u>Id.</u>  However, quantum meruit is distinct from a contract implied in fact. <u>Design Data Corp. v. Unigate Enterprise, Inc.</u>, No. C 12-4131 PJH, 2013 WL 360542, at *6 (N.D. Cal. Jan. 29, 2013).  "[Q]uantum meruit is a theory which implies a promise to pay for services as a matter of law for reasons of justice, while implied-in-fact contracts are predicated on actual agreements, albeit not ones expressed in words . . . .". <u>Maglica v. Maglica</u>, 66 Cal. App. 4th 442, 456 n. 14 (Cal. Ct. App. 1998).

Plaintiff fails to allege that the parties, even if
through their conduct and not their words, reached an
actual agreement that Defendant would pay the usual,
customary and reasonable rate.  Thus, Plaintiff fails
to establish that Defendant breached the implied in
fact contract.[3]  See <u>Ydm Management Co., Inc. v. Aetna</u>
<u>Life Insurance Company</u>, No. CV 15-00897 DDP (Ex), 2016
WL 3751943, at *4 (C.D. Cal. July 13, 2016) (dismissing
with prejudice plaintiff's claim for breach of implied
contract where plaintiff did not allege an agreement by
defendant to pay the customary, usual, and reasonable
amount for the medical services at issue).

Moreover, Plaintiff supports its added allegation
by referencing the "Gould Criteria for Usual Customary
and Reasonable rates, which the Supreme Court codified
into law as the definition of UCR rates for non-
contracted medical services."  SAC ¶ 57.  The Court
interprets Plaintiff's allegation to refer to section
1300.71(a)(3)(B) of title 28 of the California Code of
Regulations.  See <u>Pacific Bay Recovery, Inc. v.</u>
<u>California Physicians' Services, Inc.</u>, 12 Cal. App. 5th
200, 211 (Cal. Ct. App. 2017) (stating that <u>Gould v.</u>
<u>Wokers' Comp. Appeals Bd.</u>, 4 Cal. App. 4th 1059 (1992)
is the source of the factors identified in Section
1300.71).  However, section 1300.71 applies to Health

---

[3] To the extent that Plaintiff wishes to rely on a theory of
quantum meruit to recover the reasonable value of the services,
this argument has already been addressed by the Court in the
previous section.

Care Service Plans.  <u>See</u> 28 CCR Div. 1, Chap. 2.
Because, as discussed, Defendant is not a Health Care
Service Plan regulated under the Knox Keene Act,
Plaintiff has not established that Section 1300.71
should apply to Defendant.  Therefore, the Court **GRANTS**
Defendant's Motion as to Plaintiff's claim for breach
of implied contract.

    4.   <u>Declaratory Relief</u>

Plaintiff seeks a judicial declaration that
Defendant is required to pay the Physicians for all
services provided at the billed or total rates charged
by the Physicians.  SAC ¶ 64.  To receive declaratory
relief, Plaintiff must be "realistically threatened by
a *repetition* of the violation."  <u>Gest v. Bradbury</u>, 443
F.3d 1177, 1181 (9th Cir. 2006) (quoting <u>Armstrong v.
Davis</u>, 275 F.3d 849, 860-61 (9th Cir. 2001), *abrogated
on other grounds*).  Fatally, Plaintiff has not
sufficiently pleaded its standing to sue and any
violation.  <u>See</u> <u>Diamond Real Estate v. Am. Brokers
Conduit</u>, No. 16-cv-03937-HSG, 2017 U.S. Dist. LEXIS
13601, at *25 n.13 (N.D. Cal. Jan. 31, 2017)
(collecting cases dismissing declaratory relief claims
for failure to state underlying causes of action).[4]

---

[4] In the Court's prior Order, it indicated that Plaintiff
also failed to allege a realistic threat of repeated violation by
Defendant.  Order re Mot. to Dismiss FAC 13:9-12.  In an attempt
to cure this defect, Plaintiff alleges "[i]t is inevitable that
as long as the same Physicians provide emergency and post
stabilization/emergency services, and as long as Defendant[]
remain[s] a large health care plan, that underpays Physicians . .

As a result, the Court **GRANTS** Defendant's Motion as to Plaintiff's claim for declaratory relief.

    5.  <u>Leave to Amend</u>

    After a party amends a pleading as a matter of course, as Plaintiff did here, further amendment requires leave of court or consent of the adverse party. Fed. R. Civ. P. 15(a). Generally, Federal Rule of Civil Procedure 15 instructs that "leave shall be freely given when justice so requires." <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" <u>Id.</u> (quotation omitted). Nonetheless, "[i]t is well-established that a court may dismiss an entire complaint with prejudice where plaintiffs have failed to plead properly after 'repeated opportunities.'" <u>Destfino v. Reiswig</u>, 630 F.3d 952, 959 (9th Cir. 2011) (quoting <u>Neubronner v. Milken</u>, 6 F.3d 666, 672 (9th Cir.1993)).

    In determining whether to grant leave to amend, courts consider the following factors: "bad faith, undue delay, prejudice to the opposing party, and the futility of amendment." <u>In re Korean Air Lines Co.</u>, 642 F.3d 685, 701 (9th Cir. 2011) (quotation omitted).

---

. there is a real risk of repeated violation." SAC ¶ 65. Even assuming Plaintiff did adequately allege its grounds for standing and the underlying claims, Plaintiff's allegation of repeated injury is insufficient because it is conclusory and speculative, as it provides no factual basis to find that future violations are plausible.

The possibility of prejudice carries the most weight. _Eminence Capital_, 316 F.3d at 1052.

Here, there is no evidence of bad faith, undue delay, or prejudice. Furthermore, amendment is not futile as Plaintiff has an opportunity to state a plausible claim for relief by adding factual allegations to support its claims and correcting the deficiencies detailed above. Therefore, the Court **GRANTS** leave to amend these claims.[5]

///
///
///
///
///
///
///
///
///
///
///

---

[5] The Court acknowledges that Plaintiff has had several opportunities to cure the deficiencies in its Complaint. While the Court grants Plaintiff another chance to amend with the benefit of the Court's direction as stated in this Order, in the interest of preventing prejudice to Defendant, the Court notes that this is Plaintiff's final opportunity to state a claim upon which relief can be granted. _See_ Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad.") (internal quotations omitted).

### III. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's Motion [18] **WITH LEAVE TO AMEND** as to each asserted claim.  As such, the Court **DENIES AS MOOT** Plaintiff's Motion for Leave to File a Third Amended Complaint [26].  Plaintiff shall have 21 days from this date to file its Third Amended Complaint.

**IT IS SO ORDERED.**

DATED: December 7, 2018        s/RONALD S.W. LEW

**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge