**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Namdy Consulting, Inc. <br> Plaintiff, <br> v. <br> UnitedHealthcare Insurance Co., <br> Defendant. | CV 18-01283-RSWL-KS <br><br> **ORDER re: Defendant's Motion to Dismiss Third Amended Complaint** [32] |

Plaintiff Namdy Consulting, Inc. ("Plaintiff") brings this Action against Defendant UnitedHealthcare Insurance Co. ("Defendant") for additional reimbursement for alleged emergency or post-stabilization services rendered to Defendant's insureds. Before the Court is Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint ("Motion") [32]. Having reviewed all papers submitted pertaining

to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS** Defendant's Motion.

## I. BACKGROUND

### A. Factual Background

Plaintiff is a California corporation that purchases accounts receivable. Third Am. Comp. ("TAC") ¶¶ 1, 2, ECF No. 31. Defendant, a Connecticut Corporation, is an insurance corporation that is regulated by the Department of Insurance. Id. ¶ 6.

According to the Third Amended Complaint ("TAC"), Plaintiff is the assignee of certain non-party medical groups, physicians, or healthcare providers (the "Physicians"). Id. ¶ 3. Plaintiff alleges Physicians and their various billing organizations, which include Advanced Orthopedic Center, JSE Emergency Medical Group Inc., David Yamini MD Inc., and Jeffrey M. Smith M.D. Inc., assigned to Plaintiff the right to collect from Defendant for services rendered to Defendant's insureds. Id. ¶¶ 3, 5. The Physicians do not have a contract with Defendant for the payment of services and are out-of-network providers. Id. ¶ 14.

Plaintiff claims that Defendant was legally required to compensate the Physicians at the usual, customary, and reasonable ("UCR") rates, since Physicians rendered services that were emergent or authorized. See generally id. However, Defendant allegedly refused to pay or substantially underpaid the Physicians for their services. Id.

**B.  Procedural Background**

On November 30, 2017, Plaintiff filed its Complaint [1-1] against Defendant in Los Angeles Superior Court. Defendant removed the Action [1] to this Court on February 16, 2018.  Defendant filed a Motion to Dismiss the Complaint [7] on March 26, 2018, and on April 13, 2019, before the Court ruled on the Motion to Dismiss, Plaintiff filed its First Amended Complaint ("FAC") [10].  Defendant then filed a Motion to Dismiss the FAC [12], which the Court granted with leave to amend ("FAC Order") [16].

Plaintiff filed its Second Amended Complaint ("SAC") [17] on July 30, 2018.  On August 13, 2018, Defendant filed Motion to Dismiss the SAC [18], to which Plaintiff did not respond.  Instead, Plaintiff filed a Motion for Leave to File a Third Amended Complaint ("Motion to Amend") [21].[1]  On December 7, 2018, the Court granted Defendant's Motion to Dismiss with leave to amend as to each asserted claim, and denied as moot Plaintiff's Motion to Amend ("SAC Order") [30].

On January 2, 2019, Plaintiff filed its Third

---

[1] Plaintiff filed its Motion to Amend [21] on September 14, 2018.  Defendant filed an Opposition on September 25, 2018 [22]. On September 28, 2018, Plaintiff filed an amended Motion to Amend [23] and on October 2, 2018 Defendant filed a second Opposition [24].  Plaintiff filed a second amendment to its Motion to Amend [26] on October 3, 2018, and on October 11, 2018, Defendant filed a third Opposition [27].  On October 16, 2018, Plaintiff filed a reply [29].

3

Amended Complaint ("TAC") [31] re-alleging claims for quantum meruit, breach of implied contract, and declaratory relief, and asserting for the first time a claim for breach of contract. On January 16, 2019, Defendant filed the instant Motion to Dismiss [32]. Plaintiff's Opposition was due on February 5, 2019, but Plaintiff filed its Opposition [33] three days late, on February 8, 2019. On February 12, 2019, Defendant timely filed its Reply [34].

## II. DISCUSSION

### A. <u>Legal Standard</u>

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of one or more claims if the pleading fails to state a claim upon which relief can be granted. A complaint must contain sufficient facts, accepted as true, to state a plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted). Dismissal is warranted for a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988) (citation omitted).

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007) (citation omitted). A court must presume all factual

4

allegations to be true and draw all reasonable inferences in favor of the non-moving party. Klarfeld v. United States, 944 F.2d 583, 585 (9th Cir. 1991). The question is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence to support the claims. Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 184 (2005) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). While a complaint need not contain detailed factual allegations, a plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

**B.   Discussion**

As a preliminary matter, the Court points out that after granting Defendant's prior two Motions to Dismiss, and providing detailed analysis as to why each of Plaintiff's claims was insufficient, the Court informed Plaintiff that it had one final opportunity to state a claim upon which relief can be granted. See SAC Order 16 n.5, ECF No. 30. Despite the gravity of this warning, Plaintiff's TAC mostly reiterates the same allegations that the Court previously deemed insufficient. Plaintiff's attempts to cure the deficiencies pointed out by the Court largely amount to Plaintiff's inclusion of lengthy paragraphs containing policy arguments and case citations, but lacking the specificity of facts required to state a plausible

5

claim to relief. See Fed. R. Civ. Proc. 8(a)(2) (requiring that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). Moreover, Plaintiff failed to timely file its Opposition to Defendant's Motion, risking that the Court would construe its tardiness as consent to granting Defendant's Motion. See Central District Local Rule 7-12 ("The Court may decline to consider any memorandum or other document not filed within the deadline . . . . [t]he failure to file . . . within the deadline, may be deemed consent to the granting or denial of the motion . . . ."); Goulatte v. County of Riverside, 587 Fed. Appx. 374, 376 (9th Cir. 2014) ("The district court did not abuse its discretion in applying Local Rule 7-12 and granting dismissal."). Nonetheless, to further the Court's goal of deciding cases on their merits, the Court proceeds to evaluate the sufficiency of Plaintiff's TAC.

1. Plaintiff's Standing as Assignee

An "assignee of a claim has standing to assert the injury in fact suffered by the assignor." Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc., 770 F.3d 1282, 1291 (9th Cir. 2014) (quoting Spring Commc'ns Co., L.P. v. APCC Servs., 554 U.S. 269, 286 (2008)). "An assignment agreement 'must describe the subject matter with sufficient particularity to identify the rights assigned.'" Heritage Pac. Fin., LLC v. Monroy, 156 Cal. Rptr. 3d

26, 38 (Cal. Ct. App. 2013) (quoting <u>Mission Valley E., Inc. v. Cty. Of Kern</u>, 174 Cal. Rptr. 300, 305 (Cal. Ct. App. 1981)). Further, "when a particular right or set of rights is defined in an assignment, additional rights not similarly defined or named cannot be considered part of the rights transferred." <u>Id</u>. at 40-41 (quoting <u>DC3 Entm't, LLC v. John Galt Entm't, Inc.</u>, 412 F. Supp. 2d 1125, 1144 (W.D. Wash. 2006)).

The alleged assignment here is encompassed in assignment and assumption agreements (the "Assumption Agreements") and purchase and assignment agreements (the "Purchase Agreements") between Plaintiff and the Physicians. The assignment includes "all of Assignor's rights, remedies, titles, and interest in and to any and all Outstanding Bills that the Assignor provides to the Assignee during the term of the Agreement[s]." TAC, Exs. A, ECF Nos. 31:1-4. The Physicians agreed that Plaintiff "may, without limitation, investigate, appeal, seek reconsideration of any denied claims, prosecute and file lawsuits or take any other necessary and appropriate action in pursuit of the Agreement[s]." <u>Id.</u> In other words, Plaintiff has standing to recover on the "Outstanding Bills" provided to Plaintiff during the Agreements' terms.

This Court previously indicated that Plaintiff lacked standing because it failed to attach the Purchase Agreements to the Complaint or allege their terms, and without such information, the Court was

unable to determine which "Outstanding Bills" were provided to Plaintiff during the Purchase Agreements' terms. SAC Order at 7:4-10. Now, Plaintiff attaches to its TAC a list identifying the "Outstanding Bills," see ECF No. 31-5, and alleges that they have all been assigned to Plaintiff through four Purchase Agreements and Assumption Agreements between Plaintiff and the Physicians: (1) one entered into on February 28, 2018 with David Yamini, M.D., Inc. [31-1]; (2) one entered into on August 18, 2015 with JSE Emergency Medical Group Inc. [31-2]; (3) one entered into on July 2, 2015 with Jeffrey M. Smith, M.D., Inc. [31-3]; and (4) one entered into on December 5, 2016 with Advanced Orthopedic Center [31-4]. These Purchase Agreements and Assumption Agreements are effective as of the date on which they were signed, and continue for a period of one year, after which time the Agreements "automatically renew for successive one (1)-year periods unless earlier terminated by the parties." Exs. A at § 9.1.[2] Thus, even though some of the "Outstanding Bills" materialized after the Agreements were entered into, they were still validly assigned. As such, Plaintiff adequately alleged that it has

---

[2] The term provision in the Agreements with Advanced Orthopedic Center is redacted. However, the Court must accept as true Plaintiff's allegation that all of the Agreements have a "1 year revolving term and neither the Physicians nor the Plaintiff have canceled the Agreement." TAC ¶ 4.

8

standing to pursue the claims at issue.[3]

2. <u>Quantum Meruit</u>

Generally, to recover in quantum meruit, "a plaintiff must establish *both* that he or she was acting pursuant to either an *express or implied request* for such services from the defendant *and* that the services rendered were *intended to and did benefit* the defendant." <u>Day v. Alta Bates Med. Ctr.</u>, 119 Cal. Rptr. 2d 606, 609 (Cal. Ct. App. 2002).

This Court previously dismissed Plaintiff's quantum meruit claim because Plaintiff did not sufficiently allege that Defendant expressly or impliedly requested the services at issue. Plaintiff's TAC fares no better. For the third time, Plaintiff rests its quantum meruit claim on the following theoretical argument:

---

[3] Defendant contends that the Purchase Agreements contain language suggesting that "Outstanding Bills" must be bills incurred from services rendered to Patients "at the behest of Defendant." From this, Defendant argues that none of the "Outstanding Bills" could have been validly assigned to Plaintiff, because Defendant never requested emergency services. However, when reading the language in its entirety, the statement is not a separate requirement for each "Outstanding Bill" to be assignable, but rather, is included to qualify the requirement that the Physician be an out-of-contract provider. <u>See</u> TAC Exs. A § 2.1 (defining "Outstanding Bills" as "those bills . . . (ii) that [Physician] performed during a period in which [Physician] is considered to be an out-of-contract provider, such that [Physician] would not be limited to a contracted or discount rate for the Unpaid Procedures *rendered to Patients at the behest of an insurance company* or other company that is obligated to pay [Physician] for its Unpaid Procedures") (emphasis added). Thus, the assignment is not limited to charges incurred from services rendered to Patients at the behest of Defendant.

9

> As Physicians are bound by law to treat all patients that require emergency services or post stabilization emergency services regardless of availability of insurance, it must therefore be implied that when a member, insured or policy holder of Defendants enters the Emergency Room or requests emergency or post stabilization treatment, that the Defendant has by implication requested that the Physician concerned will treat that Patient and that the Defendant will pay for those services subject to the amounts stated under that Plan or Policy.

TAC ¶ 44. The Court explicitly rejected this argument in its Order granting Defendant's Motion to Dismiss Plaintiff's SAC, see SAC Order at 8:20-9:19, and rejected a similar theory raised by Plaintiff in its FAC, see FAC Order at 7:24-8:4. See also Cmty. Hosp. of the Monterey Peninsula v. Aetna Life Ins. Co., 119 F. Supp. 3d 1042, 1052 (N.D. Cal. 2016) ("Where, as here, the patient initiates the request for treatment and the hospital contacts the insurer for authorization, the insurer makes no express or implied request.").

Plaintiff's attempt to save its quantum meruit claim by adding the conclusory allegation that "[t]he Physicians were acting pursuant to an express and implied request for emergency services from the Defendants" is equally unavailing since Plaintiff does not support these assertions with any facts. TAC ¶ 51. To the contrary, throughout its TAC, Plaintiff repeatedly asserts that the Physicians rendered the services to the Patients because they were required by law to do so, or that a request was made to Defendant

to render the services but that no decision had been provided within the stipulated thirty minutes and therefore the request was deemed accepted. Id. ¶¶ 17, 42, 44. This conduct does not establish that Defendant made any express or implied request for services.

Moreover, Plaintiff cannot circumvent the foregoing by claiming that Defendant is required to pay the UCR rate for the services rendered under the Knox-Keene Act. TAC ¶ 46. The Court has twice explained that Defendant is not a Health Care Service Plan governed by the Knox-Keene Act, but an Insurance Provider properly registered with the California Department of Insurance and governed by the California Insurance Code. FAC Order at 8:10-14; SAC Order at 10:1-24. Plaintiff alleges that Defendant falls within an exception to the Knox-Keene Act, which allows it to apply to persons operating pursuant to a certificate issued by the Insurance Commissioner, because each of the underlying services were provided at health facilities that contracted with Defendant. TAC ¶ 48. However, Plaintiff fails to provide any non-conclusory, factual allegations supporting its assertion that the Defendant contracted with the facilities at issue. Simply listing the facilities involved and claiming that they "all contract with the Defendant[]" is not enough to withstand a motion to dismiss. See Twombly, 550 U.S. at 555 (requiring a plaintiff to plead more than "labels and conclusions" or "a formulaic recitation of

the elements of a cause of action").

Thus, the Court **GRANTS** Defendant's Motion as to Plaintiff's claim for quantum meruit.

3. <u>Breach of Implied Contract</u>

The elements of a claim for breach of contract are: "the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant and damages." <u>First Commercial Mortg. Co. v. Reece</u>, 108 Cal. Rptr. 2d 23, 33 (Cal. Ct. App. 2001) (citation omitted). "An implied contract is one, the existence and terms of which are manifested by conduct." Cal. Civ. Code § 1621. "Agreement may be shown by the acts and conduct of the parties, interpreted in the light of the subject matter and of the surrounding circumstances." <u>Foley v. Interactive Data Corp.</u>, 765 P.2d 373, 388 (Cal. 1988) (internal quotation omitted).

As Plaintiff alleged in its SAC, Plaintiff again maintains that a contract is implied by: (1) the Knox-Keene Act; and (2) the parties' conduct, namely that Defendant authorized the services when called and made payments towards the services. TAC ¶ 68. The first argument fails because, as discussed, Plaintiff has not shown the Knox-Keene Act applies to Defendant. With respect to the second argument, the Court previously determined that it was persuasive to show the existence of an implied contract, but that "because Defendant partially paid some of the Physicians' bills . . . the

12

issue is not whether there is an implied contract, but rather, whether Defendant impliedly contracted to pay the Physicians the usual, customary, and reasonable rates." FAC Order 12:1-24; <u>Cmty. Hosp.</u>, 119 F. Supp. 3d at 1049 (finding it unreasonable for plaintiff to expect that defendant's authorization constituted a promise to pay all of the billed charges).

Plaintiff attempts to cure this deficiency by citing California Insurance Code Section 10112.7(a) for the proposition that "[h]ealth insurers are required to cover out-of-network emergency services without the need for a prior request for authorization and to cover the services with the same cost-sharing arrangements applicable to in-network services," and then stating that "[u]npaid out-of-network providers may recover UCR for their services from health plans and health insurers." TAC ¶ 68. However, Plaintiff does not allege that Defendant failed to cover the services with the same cost-sharing arrangement applicable to in-network services, and in fact, alleges that "[i]t is simply not reasonable to expect a physician who is bound by law to treat a patient for emergency services, but is not in network with a provider, to accept an in network rate." <u>Id.</u> ¶ 69. Moreover, Plaintiff's allegation that out-of-network providers may recover UCR for their services does not appear in the California Insurance Code, but is instead premised upon <u>Bell v. Blue Cross of California</u>, 131 Cal. App. 4th

13

211, 221 (Cal. Ct. App. 2005). However, that case involved a health care service plan regulated under the Knox-Keene Act. Id. As stated multiple times, the Knox-Keene Act does not apply to Defendant.

In sum, Plaintiff fails to adequately allege that the parties, even if through their conduct and not their words, reached an agreement that Defendant would pay the UCR rate. Thus, Plaintiff fails to establish that Defendant breached the implied in fact contract. See Ydm Management Co., Inc. v. Aetna Life Insurance Company, No. CV 15-00897 DDP (Ex), 2016 WL 3751943, at *4 (C.D. Cal. July 13, 2016) (dismissing with prejudice plaintiff's claim for breach of implied contract where plaintiff did not allege an agreement by defendant to pay the customary, usual, and reasonable amount for the medical services at issue). As such, the Court **GRANTS** Defendant's Motion as to Plaintiff's claim for breach of implied contract.

4. Declaratory Relief

Plaintiff seeks a judicial declaration that Defendant is required to pay the Physicians for all services provided at the billed or total rates charged by the Physicians. TAC ¶ 76. To receive declaratory relief, Plaintiff must be "realistically threatened by a *repetition* of the violation." Gest v. Bradbury, 443 F.3d 1177, 1181 (9th Cir. 2006) (quoting Armstrong v. Davis, 275 F.3d 849, 860-61 (9th Cir. 2001), *abrogated on other grounds*). Fatally, Plaintiff has not

14

sufficiently pleaded any violation. See Diamond Real Estate v. Am. Brokers Conduit, No. 16-cv-03937-HSG, 2017 U.S. Dist. LEXIS 13601, at *25 n.13 (N.D. Cal. Jan. 31, 2017) (collecting cases dismissing declaratory relief claims for failure to state underlying causes of action). As a result, the Court **GRANTS** Defendant's Motion as to Plaintiff's claim for declaratory relief.

### 5. Breach of Contract

Plaintiff's TAC includes a new cause of action for breach of contract. Plaintiff alleges that an unrelated, third-party, "IHP Multiplan," contracted with certain insurers, including Defendant, and under those contracts, insurers are required to pay providers 85% of charges for services provided to their members. TAC ¶¶ 81-82. Plaintiff alleges that "although Plaintiff[] do[es] not have access to Defendant['s] contract with IHP they know it exists as have [sic] received payments from [Defendant] utilising it." Id. ¶ 81. Plaintiff then asserts that Defendant breached this contract with IHP Multiplan by paying the Physicians significantly lower rates than called for in the contract. Id. ¶ 82.

This claim fails for several reasons. First, it was procedurally improper for Plaintiff to add this claim for the first time in its TAC. The Court previously granted Plaintiff leave to amend its complaint to cure deficiencies in certain specified claims. Plaintiff did not request that the Court allow

15

it to add a new cause of action for breach of contract, as required by Federal Rule of Civil Procedure 15(a), and has not provided any reason as to why it failed to bring this cause of action sooner. This procedural deficiency alone warrants dismissal of this claim. See Benton v. Baker Hughes, No. CV 12-07735 MMM (MRWx),2013 U.S. Dist. LEXIS 94988, at *8-9 (C.D. Cal. June 30, 2013) (striking newly added claims because they exceeded the scope of the leave to amend and finding that since the new claims were based on substantially similar facts to those alleged in the initial complaint, the claims could have been asserted earlier).

Second, Plaintiff lacks standing to bring this claim because it fails to allege that it was a party to the contract or an intended third-party beneficiary. See Berclain Am. Latina, S.A. de C.V. v. Baan Co., 74 Cal. App. 4th 401, 405 (1999) ("It is elementary that a party asserting a claim must have standing to do so. In asserting a claim based upon a contract, this generally requires the party to be a signatory to the contract, or to be an intended third party beneficiary."). At most, Plaintiff attaches a separate contract between "IHP Multiplan" and one of the Physicians, "Jonathan Nissanoff," which was entered into in July, 2003. TAC Ex. C, ECF No. 31-6. However, Plaintiff fails to provide any information connecting itself to this contract. As such, it lacks standing to

pursue this claim.

Third, Plaintiff's claim fails on the merits because Plaintiff fails to adequately allege the existence of a contract in the first place. To sufficiently plead the existence of a contract, a plaintiff may either provide a copy of the contract or plead the terms verbatim in the complaint. <u>Gerard v. Wells Fargo Bank Nat'l Ass'n</u>, No. CV 14-06670 BRO (JPRx), 2015 U.S. Dist. LEXIS 189603, at *13 (C.D. Cal. Mar. 11, 2015) (quoting <u>McKell v. Wash. Mut. Inc.</u>, 142 Cal. Rptr. 3d 227 (Cal. Ct. App. 2006)). Plaintiff alleges that it does not have access to the contract at issue, but "know[s] it exists because it has received payments from [Defendant] utilising it." TAC ¶ 81. Specifically, Plaintiff alleges that because Defendant paid 85% of the fees for previous services provided to Defendant's insureds, it is proof that a contract exists between IHP and Defendant. TAC ¶¶ 81-82. However, Plaintiff fails to support these conclusory allegations with any facts. Thus, Plaintiff fails to state a plausible claim upon which relief could be granted.

Therefore, the Court **GRANTS** Defendant's Motion as to Plaintiff's claim for breach of contract.

6. <u>Leave to Amend</u>

After a party amends a pleading as a matter of course, as Plaintiff did here, further amendment requires leave of court or consent of the adverse

17

party. Fed. R. Civ. P. 15(a). Federal Rule of Civil Procedure 15 instructs that "leave shall be freely given when justice so requires." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003). However, "where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir. 2009) (internal quotations omitted).

This Court has twice granted Plaintiff leave to amend to cure the deficiencies highlighted by the Court. Nonetheless, Plaintiff has still failed to sufficiently state each cause of action. See Destfino v. Reiswig, 630 F.3d 952, 959 (9th Cir. 2011) (quoting Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir.1993)) ("It is well-established that a court may dismiss an entire complaint with prejudice where plaintiffs have failed to plead properly after 'repeated opportunities.'"). With each opportunity to amend, Plaintiff simply adds lengthy paragraphs explaining why Plaintiff should recover as a matter of policy. Plaintiff's repeated failure to cure its deficiencies leaves the Court to surmise that Plaintiff is unable to do so. Moreover, allowing Plaintiff another opportunity to amend would prejudice Defendant, who is forced to respond to each iteration of the complaint

| 1  | with a new motion to dismiss.  Because amendment would
| 2  | be futile and would prejudice Defendant, the Court
| 3  | **DENIES** Plaintiff's request for leave to amend.

### III. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's TAC [32] **WITHOUT LEAVE TO AMEND.**

**IT IS SO ORDERED.**

DATED: April 3, 2019            S/RONALD S.W.LEW
                                _____
                                **HONORABLE RONALD S.W. LEW**
                                Senior U.S. District Judge

19